UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

LARRY JONES,

     **Petitioner,**

 - against -

WILLIAM LEE, Superintendent,
Greenhaven Correctional Facility,

     **Respondent.**

------------------------------------------------ X

<u>**OPINION AND ORDER**</u>

**10 Civ. 7915 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

   Petitioner Larry Jones, a New York state prisoner, appearing pro se, petitions this Court for a writ of habeas corpus, stating two grounds for the writ. *First*, Jones argues that his conviction was based on a duplicitous count of second-degree criminal possession of a weapon. *Second*, he argues that he received ineffective assistance of counsel because trial counsel failed to raise the aforementioned duplicity issue.

   Jones's duplicity claim is barred on independent and adequate state law grounds — it was not raised at trial and rejected for this reason by the state appellate court. Even if it were not barred, the claim fails on its merits because the

1

disputed jury charge does not violate the United States Constitution.  Finally, Jones

has not demonstrated that the trial court, on a motion to vacate the judgment,

erroneously applied federal law when it decided that counsel was sufficiently

effective.  As such, Jones's petition for a writ of habeas corpus is denied.

## II.   BACKGROUND

### A.   The Underlying Crimes

The underlying crimes that Jones was convicted of occurred on

January 17, 2004 at Co-op City, a massive cooperative housing development in the

Bronx.[1]  At approximately 1:00 a.m., Jones's  co-defendant, William Green,

brandished a .38 caliber chrome revolver and used it to strike Rob Moore in the

face.  Green then demanded money from Moore, at which point Jones approached

the pair, pulled a black .45 caliber pistol from his jacket, and struck Moore in the

back of the head.  After Moore fell to the ground, Jones ordered him to walk to the

back of the building, where Jones went through Moore's pockets and allegedly

took items from him.[2]

---

[1]    *See* Petitioner's Memorandum of Law in Support of Petition for a
Writ of Habeas Corpus ("Pet. Mem.") at 2.  The facts in this portion of the Opinion
are taken from Jones's brief, which presents the People's case and the testimony of
the victim at trial.

[2]    *See id.* at 6-7.

At this point, Green pulled out another, even larger gun, and aimed it at Moore's head.  Jones then pointed his gun at Moore's leg, asking Green whether he should shoot Moore in the leg or the head.  Fortunately, Jones elected to do neither, and either Jones or Green told Moore to run away.[3]

Officers were eventually notified of the robbery and responded to the scene.  After driving around, they saw two men who fit the description of Moore's assailants — these men were in fact Jones and Green.  When the officers asked the pair where they were coming from and to present identification, Jones and Green took off on foot.  During the chase, Green pulled two guns from his coat pockets.  One of the officers then drew his weapon and ordered Green to drop the guns.  Green complied with this order, but continued to run.[4]

When Jones also reached into his jacket pocket, the officer — fearing that Jones was armed — tackled him to the ground.  At trial, the officer testified that he saw a black gun in Jones's hand, but that it "flew forward" when he was tackled.  After a brief scuffle, officers arrested both Jones and Green.[5]

---

[3]     *See id.* at 7.

[4]     *See id.* at 7-8.

[5]     *See id.* at 9-10.

After the arrest, officers took Jones and Green to a car where Moore was waiting, at which point Moore identified both men as his assailants.[6]  The officers found two revolvers, one .357 caliber and the other .38 caliber, in the parking lot area where Green dropped his guns during the chase.[7]  They also found a .45 caliber Colt semiautomatic handgun in the snow near where the struggle with Jones occurred.[8]

**B.      The Indictment and Jury Charge**

On February 13, 2004, a Bronx County Grand Jury returned an Indictment against Jones and Green, charging them with thirty-five counts ranging from first-degree robbery to possession of marijuana.[9]  Of particular relevance to this Petition, counts twenty-one through twenty-three of the Indictment charged the defendants with criminal possession of a weapon in the second degree.[10]  Those

---

[6]      *See id.* at 10; Trial Transcript Excerpt: Trial Testimony of Robert Moore at 32-34.

[7]      *See* Pet. Mem. at 10.

[8]      *See id.*

[9]      *See* Indictment, Ex. 1 to 1/4/12 Declaration of Assistant District Attorney Kayonia L. Whetstone ("Whetstone Decl.").

[10]      *See id.* at 12-13.  *See also* N.Y. Penal Law § 265.03 (McKinney 2013).

4

counts, all identically worded, read:  "The defendants, acting in concert with each other, on or about January 17, 2004, in the County of the Bronx, did possess a loaded firearm with intent to use unlawfully against another."[11]

At an initial conference on the jury charge, the trial court expressed its "focus . . . on simplifying rather than complicating" the counts presented to the jury, preferring one rather than three counts of the same offense.[12]  This sentiment was reiterated in further proceedings just before summations at trial, with the court specifying that four counts would be included on the verdict sheet — Robbery in the First Degree, Robbery in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree.[13]

These four counts were the only ones included on the verdict sheet and in the jury charge.[14]  The charge for the count in question, Criminal Possession of a Weapon in the Second Degree, read as follows:

Count three is the crime criminal possession of a weapon in the second degree.

---

[11]     Indictment at 12-13.

[12]     Trial Transcript ("Trial Tr.") at 464-465.

[13]     *See id.* at 774, 781-783.

[14]     *See id.* at 921-929; Verdict Sheet, Court Exhibit XIII.

Under our law a person is guilty of the crime of criminal possession of a weapon in the second degree when with intent to use the same unlawfully against another, that person knowingly possesses a loaded firearm.

. . . .

In order for you to find the defendant Larry Jones guilty of this crime the People are required to prove from all of the evidence in the case beyond a reasonable doubt each of the following four elements:

One; that on or about January the 17th of 2004, in the County of the Bronx, the defendant Larry Jones acting in concert with another, possessed a loaded firearm.

Two; that the defendant did so knowingly.

Three; that the firearm was operable.

And four; that the defendant possessed a loaded firearm with the intent to use it unlawfully against another.[15]

Notably, no particular gun was mentioned in this charge.[16]  Jones's trial counsel did not object.[17]

After three full days of deliberation, the jury informed the court that they had reached a unanimous decision as to Count Three (Criminal Possession of a Weapon in the Second Degree), but could not agree on the robbery counts.  The court decided to take a partial verdict as to Count Three and to give the jury an *Allen* charge as to the remaining counts.  The court then recorded the jury's guilty

---

[15]    Trial Tr. at 925-927.

[16]    *See id.*; Pet. Mem. at 11-12.

[17]    *See* Trial Tr. at 933; Pet. Mem. at 12.

verdict as to second-degree criminal possession of a weapon.  After further deliberations, the jury was still unable to come to a verdict as to the robbery counts, and the court declared a mistrial on those counts.[18]

At sentencing for the possession charge, the trial court sentenced Jones to a thirteen-year term of incarceration followed by five years of post-release supervision.[19]  Jones eventually pled guilty to assault in the second degree to satisfy all of the remaining counts in the Indictment,[20] and was sentenced to seven years to run concurrently with the sentence for the possession count.[21]

### C.    The First Motion to Vacate the Judgment

After Jones's sentencing for the possession charge, counsel moved in the trial court to vacate the judgment under New York Criminal Procedure Law Section 440.10.[22]  As grounds therefore, Jones argued that the count of Criminal Possession of a Weapon in the Second Degree, as charged to the jury, violated his

---

[18]    *See* Trial Tr. at 1036-1043, 1062-1063.

[19]    *See* 4/28/05 Sentencing Transcript ("Sen. Tr.") at 29.

[20]    *See* 5/12/06 Plea Transcript at 3-4, 10.

[21]    *See id.* at 14.

[22]    *See* 10/6/05 Notice of Motion and Affirmation of Jeffrey A. Horn, Trial Counsel for Jones, Ex. 2 to Whetstone Decl.

constitutional rights and was prohibited under New York procedural rules.[23]  Jones argued that his due process rights were violated because the verdict was ambiguous — the charge given to the jury did not specify whether the weapon was possessed with intent to use unlawfully in the alleged robbery or in the subsequent police chase, nor did it specify which gun Jones possessed (his or those of his co-defendant, Green).[24]  Trial counsel's affirmation also noted that in a post-conviction conversation with the Assistant District Attorney, several jurors stated that they voted to convict based on the acting-in-concert theory,[25] while another juror said that "she and several other jurors convicted [Jones] because they were convinced that defendant Jones possessed the weapon attributed to him by Officer Perez during the chase [the Colt .45]."[26]

The trial court denied this motion on the ground that it had no authority to review a claim under Section 440.10 when that claim could be raised

---

[23]     *See id.* at 4.

[24]     *See id.* at 4-5.

[25]     *See id.* at 8-9.

[26]     *Id.* at 9.

on direct appeal.[27]  The court stated that because the trial record "will fully reflect

the lengthy charge conference, defendant's request for submission of only one

count of weapon possession,[28] and the charge actually given to the jury. . . .

defendant's claim is fully reviewable on direct appeal."[29]

### D.    State Ineffective Assistance Claims

Following the denial of his first motion to vacate and the entry of his

guilty plea for assault, Jones obtained new counsel and filed a second motion in the

trial court to vacate the judgment.[30]  In this motion, Jones argued that his trial

counsel was so ineffective as to violate his rights under the United States and New

York Constitutions.[31]  According to Jones, the failure to raise the issue of duplicity

---

[27]    *See People v. Jones* (*Jones I*), No. 763/04, slip op. at 2 (Sup. Ct. Bronx Co. Mar. 27, 2006) (citing N.Y. Crim. Proc. Law § 440.10(2)(b)), Ex. 4 to Whetstone Decl.

[28]    Jones contests the trial court's view that the defense requested the submission of only one second-degree possession count to the jury.  *See* Pet. Mem. at 15.  However, this fact does not affect the trial court's denial of his motion under Section 440.10.

[29]    *Jones I*, slip op. at 3-4.

[30]    *See* 4/17/07 Notice of Motion, Ex. 5 to Whetstone Decl.

[31]    *See* 4/17/07 Affirmation of Abigail Everett, Ex. 5 to Whetstone Decl., ¶ 3.

9

and object to the jury charge for second-degree criminal possession of a weapon was alone sufficient to render the assistance of trial counsel ineffective.[32]

The trial court again denied Jones's motion to vacate.[33]  After a ten-page analysis of Jones's ineffective assistance claim under *Strickland v. Washington*,[34] the court determined that "counsel's actions during the course of . . . trial adequately provided [Jones] with meaningful representation."[35]  The court specifically noted that raising the duplicity issue would have been "potentially detrimental" because if each of the guns were charged separately, Jones could have been subject to multiple convictions and consecutive sentences.[36]  Thus, the submission of only one count "was fully consistent with [trial counsel's] strategy of reducing the number of criminal charges the jury would consider and, thus, [Jones's] possible penal exposure."[37]  A justice of the Appellate Division denied

---

[32]     *See id.*

[33]     *See People v. Jones* (*Jones II*), No. 763/04 (Sup. Ct. Bronx Co. Mar. 20, 2008), Ex. 7 to Whetstone Decl.

[34]     466 U.S. 668 (1984).

[35]     *Jones II*, slip op. at 15.

[36]     *See id.* at 9-11.

[37]     *Id.* at 12 n.5.

10

leave to challenge this ruling, thereby exhausting Jones's state appeals on his

ineffective assistance claim.[38]

### E.   State Direct Appeal

While Jones's ineffective assistance claim was moving through the

courts, he perfected his appeal to the Appellate Division, directly challenging the

judgment against him as duplicitous.[39]  Appellate counsel argued that because the

weapon possession counts in the indictment and the count ultimately charged to the

jury did not specify which specific firearm Jones was accused of possessing and

whether the unlawful use was from the robbery or the police chase, more than one

crime was contained in the same count, making it impermissibly duplicitous.[40]

Jones claimed that this duplicity violated New York requirements for indictments

---

[38]     *See People v. Jones* (*Jones III*), No. M-1806 (1st Dep't June 25, 2008), Ex. 10 to Whetstone Decl.  *See also* N.Y. Crim. Proc. Law § 450.15(1) (providing for discretionary review of Section 440.10 denials by the Appellate Division); *id.* § 450.90(1) (not permitting review by the Court of Appeals when the Appellate Division denies discretionary review).

[39]     *See* Brief for Defendant-Appellant, *People v. Jones* (*Jones IV*), 881 N.Y.S.2d 294 (1st Dep't 2009) (No. 989), 2009 WL 7603976, Ex. 11 to Whetstone Decl.

[40]     *See id.* at 28-30.

and violated his constitutional rights.[41]  While Jones recognized that his counsel did not raise the duplicity claim at trial, he also argued that because the issue of duplicity raises a "'fundamental taint'" to the conviction, it "'should be addressed on appeal in the interest of justice.'"[42]

The Appellate Division, while not discussing Jones's "fundamental taint" argument, rejected the duplicity claim as procedurally barred.[43]  The court held, without additional discussion, that because Jones "did not preserve his claim that the count upon which he was convicted after trial was duplicitous, . . . we decline to review it in the interest of justice."[44]  As an alternative holding, the court also rejected the duplicity claim on the merits.[45]  In so doing, the Appellate Division found that the weapon possession count was not duplicitous because it in fact "had a single factual basis, that is, the People's theory that, in a brief, continuing incident, [Jones] and [Green] collectively possessed several handguns

---

[41]     *See id.* at 30.

[42]     *Id.* at 39 (quoting *People v. Jackson*, 572 N.Y.S.2d 891, 893 (1st Dep't 1991)).

[43]     *See Jones IV*, 881 N.Y.S.2d at 294.

[44]     *Id.*

[45]     *See id.*

12

as part of a joint criminal enterprise . . . ."[46]  Finally, the court rejected Jones's "alleged extrinsic evidence of the mental processes of certain jurors," and despite denying leave to appeal the second motion to vacate, "reject[ed] his ineffective assistance of counsel claim."[47]  The Court of Appeals denied leave to appeal,[48] thereby exhausting Jones's state claims.[49]

### F.     Federal Habeas

On October 18, 2010, Jones appeared pro se and filed the instant petition for a writ of habeas corpus in this Court, raising the two grounds argued above — that the jury charge was duplicitous and his trial counsel was ineffective under *Strickland*.[50]  Recognizing the potential procedural bar caused by trial counsel's failure to object to the charge or raise the duplicity claim at trial, Jones argues that federal habeas review is not barred by the independent and adequate

---

[46]     *Id.* at 294-95 (citations omitted).

[47]     *Id.* at 295.

[48]     *See People v. Jones* (*Jones V*), 13 N.Y.3d 797 (2009).

[49]     *See* Whetstone Decl. ¶ 28 (agreeing that Jones's state claims are exhausted).

[50]     *See* Petition ("Pet.").

13

state grounds doctrine.[51]  Jones argues that the procedural bar was not adequate to preclude federal habeas review because New York courts "do[] not fairly and consistently apply the procedural rule" and, alternatively, that counsel's ineffective performance supplies sufficient cause for the procedural default.[52]

## III.   LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA provides that a federal court may grant a writ of habeas corpus to a state prisoner only if the state court's adjudication of a particular claim, on the merits in a state court proceeding, resulted in a decision that:

> (1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[53]

---

[51]    *See id.* ¶ 22.  Note that due to a numbering error, there are two paragraphs numbered "22" in Jones's petition — this citation refers to the first of them.

[52]    *Id.*

[53]    28 U.S.C. § 2254(d) (2006).  *Accord Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 114 (2009)).

With respect to subsection 2254(d)(1), the Supreme Court has explained that a state-court decision is "contrary to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[54]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[55]

---

[54]     *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[55]     *Id.* at 407.

15

Thus, in order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous:  "[t]he state court's application of clearly established law must be *objectively unreasonable*."[56]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[57]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[58]

## IV.   APPLICABLE LAW

### A.   Independent and Adequate State Law Grounds

On a petition for a writ of habeas corpus, federal courts "will not review a question of federal law decided by a state court if the decision of that

---

[56]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 130 S. Ct. 1855, 1867 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Taylor*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[57]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[58]     *Stinson*, 229 F.3d at 119 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations omitted)).

court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[59]  This can occur "when a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."[60]

Habeas relief is generally foreclosed when the state court bases its decision on a "firmly established and regularly followed" state procedural rule.[61] "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."[62]  In determining this, the Second Circuit has considered, "as guideposts," three questions:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding

---

[59]  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

[60]  *Id.* at 729-30.

[61]  *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citing *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

[62]  *Id.* (citing *Davis v. Wechsler*, 263 U.S. 22, 24 (1923)).

17

perfect compliance with the rule would serve a legitimate governmental interest.[63]

Even if adequate and independent state grounds do exist, a federal court will still review a petitioner's habeas claim if "the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"[64] When trial counsel fails to timely object or otherwise raise a claim so as to create a procedural bar,

> the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.[65]

If counsel's error does not rise to the level of ineffective assistance, cause must instead come from "some objective factor external to the defense."[66]

---

[63]    *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee*, 534 U.S. at 381-85).

[64]    *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citation omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 498 (1986)).

[65]    *Murray*, 477 U.S. at 488 (citation omitted).

[66]    *Id.*

18

If a petitioner is able to sufficiently demonstrate cause, she must still show "'actual prejudice resulting from the errors of which [Petitioner] complains.'"[67]  "The error must have resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'"[68]  Furthermore, if a petitioner is unable to show both cause and prejudice, a "fundamental miscarriage of justice" allowing habeas review only exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."[69]

## B.   Duplicity and the Constitutional Sufficiency of Indictments

Duplicity occurs where two or more distinct crimes are combined in a single count.[70]  The reasons for prohibiting duplicitous counts include:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate

---

[67]   *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)).

[68]   *Id.* (alteration in original) (quoting *Murray*, 477 U.S. at 494).

[69]   *Murray*, 477 U.S. at 496.

[70]   *See, e.g.*, *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) ("An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count . . . and 2) the defendant is prejudiced thereby.").

sentencing, and protecting against double jeopardy in a subsequent prosecution.[71]

Procedural rules create the prohibition of duplicitous counts — there is no constitutional right against duplicity per se.[72]  In New York, this rule is found in Criminal Procedure Law Section 200.30(1), which specifies that "[e]ach count of an indictment may charge one offense only."[73]  Such state law requirements cannot be considered by federal courts on habeas review.[74]  However, a duplicitous count may violate a defendant's constitutional rights (thus opening the door to habeas review) if it violates "the Sixth Amendment's guarantee that an accused be adequately 'informed of the nature and cause of the accusation' and the Fifth Amendment's interdiction against double jeopardy."[75]  These concerns parallel the constitutional requirements for indictments generally.

---

[71]  *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981).

[72]  *See Williams v. Lempke*, No. 11 Civ. 2504, 2012 WL 2086955, at *21 (S.D.N.Y. June 1, 2012) ("[Petitioner] has cited, and I have found, no Supreme Court decision clearly prohibiting a duplicitous indictment as a matter of federal constitutional law.").

[73]  N.Y. Crim. Proc. Law § 200.30.

[74]  *See* 28 U.S.C. § 2254(a).

[75]  *United States v. Kearney*, 444 F. Supp. 1290, 1292 (S.D.N.Y. 1978) (quoting U.S. Const. amend. VI).

20

The Supreme Court has outlined two requirements that an indictment must meet in order to be constitutionally sufficient: "'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"[76] While "the language of the statute may be used in the general description of an offense, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."[77]  However, an indictment is typically sufficient to inform the accused and avoid the potential for double jeopardy so long as it states the elements of the offense charged and the approximate time and place of the crime.[78]

---

[76]    *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (alterations in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

[77]    *United States v. Hess*, 124 U.S. 483, 487 (1888).  *Accord Resendiz-Ponce*, 549 U.S. at 109; *Hamling*, 418 U.S. at 117-18.

[78]    *See, e.g.*, *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

### C.     Ineffective Assistance of Counsel Under *Strickland v. Washington*

To succeed on a claim of ineffective assistance of counsel, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[79]  "[T]he burden rests on the accused to demonstrate a constitutional violation."[80]

"To satisfy the first prong — the performance prong — the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'"[81] The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the

---

[79]     *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 688, 694).  *Accord Smith v. Spisak*, 558 U.S. 139, 149 (2010).

[80]     *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[81]      *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687 (internal quotation marks omitted)).

circumstances."[82]   "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[83]

In determining what constitutes objective reasonableness, courts look for guidance to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[84]   Attorney errors that fall below an objective standard of reasonableness "include 'omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness.'"[85]   "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's

---

[82]   *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[83]   *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (alteration in original) (quoting *Strickland*, 466 U.S. at 690).

[84]   *Purdy*, 208 F.3d at 44 (alteration in original) (quoting *Strickland*, 466 U.S. at 688).

[85]   *Wilson*, 570 F.3d at 502 (alterations in original) (quoting *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003)).  The Second Circuit has held that "counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'  Conversely, when a trial court's instruction is legally correct as given, the failure to request an additional instruction does not constitute deficient performance." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir. 1998)).

conduct falls within the wide range of reasonable professional assistance.'"[86]

"'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[87]

To satisfy the second prong — the prejudice prong — a "defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[88]  "To determine whether prejudice exists in [a] case, [courts] review the record to determine the relative role that the alleged trial errors played in the total context of th[e] trial."[89]  In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a

---

[86]     *Knowles*, 556 U.S. at 124 (quoting *Strickland*, 466 U.S. at 689).

[87]     *Id.* (quoting *Strickland*, 466 U.S. at 688).

[88]     *Strickland*, 466 U.S. at 694 (emphasis added).

[89]     *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  *Accord Berghuis*, 130 S. Ct. at 2264 ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" (quoting *Strickland*, 466 U.S. at 695)).

reasonable doubt respecting guilt."[90]  Finally, a finding of lack of prejudice may

precede, or preempt, the quality of representation inquiry.[91]

## V.    DISCUSSION

### A.    Jones's Duplicity Claim Is Procedurally Barred

In order for a party to preserve an issue for appeal, section 470.05 of

the New York Criminal Procedure Law requires protest to a disputed court ruling

or instruction "at the time . . . such ruling or instruction" is made.[92]  Failing to meet

this procedural requirement also precludes federal habeas relief.[93]  This is because

a state court's rejection of a petitioner's claims via a state procedural rule

represents a rejection on independent and adequate state law grounds.[94]

---

[90]    *Strickland*, 466 U.S. at 695.

[91]    *See id.* at 697.

[92]    N.Y. Crim. Proc. Law § 470.05(2).

[93]    *See Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (noting that a habeas petitioner's claim was "procedurally barred because [petitioner] failed to object to the charge and thus did not preserve the issue for appeal").  *See also Lee*, 534 U.S. at 376 ("[V]iolation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim.").

[94]    *See Coleman*, 501 U.S. at 729-30.

Jones's trial counsel failed to raise an objection for duplicity within the timeliness requirements of Section 470.05.  The first time Jones raised the issue of duplicity was in his first Section 440.10 motion, after the verdict against him was already recorded.  This is clearly not "at the time of [the contested] ruling or instruction."[95]

### 1.   The Contemporaneous Objection Rule Is Firmly Established and Regularly Followed

Jones first contests the application of this procedural bar on the basis that "the state appellate court does not fairly and consistently apply the procedural rule."[96]  Jones relies on *People v. Archer*,[97] an Appellate Division case also addressing an indictment containing three identical counts of criminal possession of a weapon.  In that case, the court held that "[a]lthough defendant failed to preserve this issue for appellate review, we nevertheless choose to review this fundamental error in the interest of justice . . . ."[98]

---

[95]   N.Y. Crim. Proc. Law § 470.05(2).

[96]   Pet. Mem. ¶ 22.

[97]   656 N.Y.S.2d 237 (1st Dep't 1997).

[98]   *Id.* at 239.

However, *Archer* is easily distinguishable because, in that case, all three counts of gun possession were submitted to the jury.  In the jury charge in *Archer*, the court "did not specify which gun, of the three recovered by the police at or shortly after defendant's arrest, pertained to which count."[99]  The defendant was subsequently found guilty on one count but found not guilty on the other two.[100]  As such, there were three separate offenses charged, and each count had to represent a different firearm, but this difference was not explained to the jury.

Furthermore, the Appellate Division's decision to allow the appeal in *Archer* despite the procedural bar does not mean that the contemporaneous objection rule is not "firmly established and *regularly* followed."[101]  The option for the Appellate Division to allow such an appeal despite the rule comes from its power to determine appeals "[a]s a matter of discretion in the interest of justice."[102]  However, the exercise of this discretion does not negate the underlying rule — an overwhelming number of cases exist where New York courts have declined to

---

[99]     *Id.* at 238.

[100]     *See id.*

[101]     *Lee*, 534 U.S. at 376 (emphasis added) (citing *James*, 466 U.S. at 348).

[102]     N.Y. Crim. Proc. Law § 470.15(3)(c).

waive the requirements of Section 470.05 in cases of alleged duplicity.[103]  As such,

the contemporaneous objection rule is "firmly established and regularly followed."

### 2. The Denial of Jones's Appeal Was Not an "Exorbitant" Application of the Contemporaneous Objection Rule

Viewed in light of the factors from *Lee*[104] as prescribed by the Second

Circuit in *Cotto*,[105] the Appellate Division's application of the contemporaneous

objection rule to deny Jones's appeal was not "exorbitant" so as to "render[] the

state ground inadequate to stop consideration of a federal question."[106]  *First*, the

---

[103]    *See, e.g.*, *People v. Nash*, 908 N.Y.S.2d 708, 710 (2d Dep't 2010) ("The defendant's . . . argument that the trial court's charge and jury verdict sheet impermissibly resulted in his conviction on duplicitous counts is likewise unpreserved for appellate review, as no objection was made by the defendant's counsel on this issue . . . ."); *People v. Wood*, 831 N.Y.S.2d 39, 40 (1st Dep't 2007) ("Defendant did not preserve his claim that certain counts were duplicitous, in that multiple criminal acts might have been covered by individual counts, and we decline to review it in the interest of justice."); *People v. Rivera*, 683 N.Y.S.2d 513, 513 (1st Dep't 1999) ("Defendant has failed to preserve for appellate review his contention that the indictment was duplicitous. . . . We decline to review this claim in the interest of justice. "); *People v. Fisher*, 637 N.Y.S.2d 382, 383 (1st Dep't 1996) ("Defendant's assertion that the indictment was duplicitous is unpreserved since he never made a pretrial motion to dismiss the indictment or for a further bill of particulars and did not object to submission of the counts to the jury . . . .").

[104]    534 U.S. at 381-85.

[105]    331 F.3d at 240.

[106]    *Lee*, 534 U.S. at 376 (citing *Davis*, 263 U.S. at 24).

only New York court presented with the question of whether Jones's duplicity claim was procedurally barred by the contemporaneous objection rule — the Appellate Division — "actually relied" on that rule in denying Jones's appeal.[107] While *Lee* is framed in the context of the actions of the trial court,[108] the Second Circuit recognized in *Cotto* that the question of the trial court's actual reliance in failure-to-preserve cases "is less applicable . . . because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court."[109]  Additionally, the alternative holding on the merits by the Appellate Division does not affect that court's actual reliance on the procedural bar in denying Jones's appeal.[110]

---

[107]     *See Jones IV*, 881 N.Y.S.2d at 294 ("Defendant did not preserve his claim that the count upon which he was convicted after trial was duplicitous, and we decline to review it in the interest of justice.").

[108]     *See Lee*, 534 U.S. at 381.

[109]     *Cotto*, 331 F.3d at 242.

[110]     *See Reed*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

*Second*, the state case law indicates that compliance with the rule was demanded in the circumstances presented.  The need for compliance with Section 470.05 is well-established.[111]  The contemporaneous objection rule is uniformly invoked by the courts of this country, and is discussed in every major legal encyclopedia and text on criminal procedure.[112]  Also, as discussed above, the ability of the Appellate Division to exercise its discretion and allow an otherwise-barred appeal does not mean that New York law fails to demonstrate the need for compliance with the rule.

*Third*, it cannot be said that Jones "'substantially complied' with the rule given 'the realities of trial.'"[113]  This was not a case where Jones attempted to raise the issue or simply failed to register his objection at the precise moment required by statute.  During trial, Jones did not raise the issue of duplicity at all.  As such, all three of the "guideposts" in *Cotto* indicate that the state procedural

---

[111]    *See, e.g.*, *People v. Hanley*, 20 N.Y.3d 601, 604 (2013) ("As a general rule, our 'Court does not consider claims of error not preserved by appropriate objection in the court of first instance.'" (quoting *People v. Becoats*, 17 N.Y.3d 643, 650 (2011), *cert. denied*, 132 S. Ct. 1970 (2012))).

[112]    *See, e.g.*, 75A *American Jurisprudence* 2d Trial § 1234 (2013); 4 *Corpus Juris Secundum* Appeal and Error § 307 (2013); Wayne R. LaFave et al., *Criminal Procedure* § 24.8(b) (2012); *Criminal Practice Manual* § 99:16 (2013).

[113]    *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 889).

rule was an adequate state ground by which the Appellate Division denied Jones's appeal.

### 3. The Question of Cause and Prejudice Is Answered with Jones's *Strickland* Claim

While Jones could still be entitled to habeas review by demonstrating both cause for his default and prejudice arising therefrom, there is no need to conduct a separate inquiry in this case. If trial counsel's failure to object is so significant as to amount to ineffective assistance, the writ should already issue under Jones's independent *Strickland* claim.[114]

Because Jones's *Strickland* claim ultimately fails on habeas review, Jones has not demonstrated cause and prejudice for his procedural default. Similarly, Jones has not demonstrated or even attempted to claim his actual innocence so as to show a "fundamental miscarriage of justice."[115] As such, federal habeas relief on Jones's duplicity claim is barred by the independent and adequate state law grounds doctrine.

---

[114]     *See* Pet. ¶ 20 (outlining Jones's ineffective assistance claim).

[115]     *See Murray*, 477 U.S. at 496.

31

**B.     Jones's Duplicity Claim Does Not Present a Violation of Clearly Established Federal Law**

Even if this Court were to consider the merits of the duplicity claim, Jones fails to present a claim upon which habeas relief may be granted.  This is because the Appellate Division's finding of no duplicity did not amount to a decision contrary to, or an unreasonable application of, clearly established federal law.[116]  There is no federal constitutional right against duplicity,[117] nor is there a federal constitutional right to unanimous jury verdicts in state criminal proceedings.[118]  Nevertheless, a duplicitous count may still violate a criminal defendant's constitutional rights by not adequately informing her "of the nature

---

[116]     Although the Appellate Division's decision on the merits of Jones's duplicity claim was made as an alternative holding, *Jones IV*, 881 N.Y.S.2d at 294, it is still entitled to AEDPA deference.  *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) ("The Appellate Division found petitioner's claim to be unpreserved, and, in any event, without merit, and therefore reviewed the claim on the merits.").  *See also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (citing *Zarvela* for the proposition that an alternative holding "constitute[s] an adjudication on the merits").

[117]     *See Lempke*, 2012 WL 2086955, at *21.

[118]     *See Apodoca v. Oregon*, 406 U.S. 404, 406 (1972) (plurality opinion).

and cause of the accusation" against her,[119] or by creating the possibility of double jeopardy.[120]

In this case, however, the second-degree weapon possession count adequately informed Jones of the nature of the charges against him and also "'enable[d] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"[121]  Typically, all that is required for a count to be constitutionally sufficient is a statement of the elements of the offense charged along with the time and place that it was allegedly committed.[122]  The final second-degree weapon possession count required the jury to find:

---

[119]    U.S. Const. amend. VI.

[120]    *See Kearney*, 444 F. Supp. at 1292.  *See also Resendiz-Ponce*, 549 U.S. at 108 (holding the same for the constitutional sufficiency of indictments generally).  Due to the sparsity of the Appellate Division's opinion, the easiest way to demonstrate that its decision was in accordance with clearly established federal law is to show that the jury charge was constitutionally sufficient.  However, the Appellate Division's ruling is entitled to deference under AEDPA.  *See* 28 U.S.C. § 2254(d).

[121]    *Resendiz-Ponce*, 549 U.S. at 108 (quoting *Hamling*, 418 U.S. at 117).

[122]    *See, e.g.*, *Alfonso*, 143 F.3d at 776.  *Cf. United States v. Bailey*, 444 U.S. 394, 414 (1980) (finding indictments that "track[ed] closely the language" of the statute to be constitutionally sufficient).

> One; that on or about January the 17th of 2004, in the County of the Bronx, the defendant Larry Jones acting in concert with another, possessed a loaded firearm.
> Two; that the defendant did so knowingly.
> Three; that the firearm was operable.
> And four; that the defendant possessed a loaded firearm with the intent to use it unlawfully against another.[123]

The Indictment similarly alleged that "[t]he defendants, acting in concert with each other, on or about January 17, 2004, in the County of the Bronx, did possess a loaded firearm with intent to use unlawfully against another."[124]

Both of these formulations of the weapon possession count pass constitutional muster. They each track the language of the statute, which specifies, in relevant part, that "[a] person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person: . . . (b) possesses a loaded firearm . . . ."[125] Similarly, they both allege the date that the crime occurred and the approximate location. Accordingly, Jones had sufficient notice of the crime with which he was being charged. Moreover,

---

[123]    Trial Tr. at 926-927.

[124]    Indictment at 12-13.

[125]    N.Y. Penal Law § 265.03.

34

Jones could have relied on the count to plead double jeopardy if he was subsequently charged with another crime stemming from the same events.

The existence of multiple firearms in the underlying offense does not change the minimum requirements for a constitutional indictment, as the specific gun (or guns) employed is not an element of the offense of criminal possession of a weapon.[126] Similarly, in federal weapon possession cases, courts have held that "language in the indictment describing the [model of firearms] was surplusage, rather than an essential element of the crimes . . . ."[127] Reducing the number of possession counts from three to one does not present a greater risk for double jeopardy because the prosecution's theory, as stated by the Appellate Division, "had a single factual basis, that is, the People's theory that, in a brief, continuing

---

[126]   *See People v. Buanno*, 745 N.Y.S.2d 590, 591 (3d Dep't 2002) ("Proof that defendant possessed a loaded firearm, as alleged in two counts of the indictment, is sufficient to sustain a conviction of the weapon possession counts of the indictment without the need for proof of the additional facts alleged in the indictment regarding the caliber and make of the firearm." (citations omitted)).

[127]   *United States v. Hart*, 458 F.3d 1011, 1021 (9th Cir. 2006). *Accord United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (holding that the trial court's jury instructions, which omitted the specific model of gun mentioned in the indictment, was not an impermissible amendment "because the specific type of firearm used or possessed by the conspirator is not an essential element of the crime").

incident, [Jones] and [Green] collectively possessed several handguns as part of a joint criminal enterprise . . . ."[128]  Thus, the Constitution's prohibition on double jeopardy precludes Jones's future prosecution for possession of any firearm held in the "brief, continuing incident" that formed the factual basis of the charge of conviction.

While Jones also argues that the trial and appellate courts erred by allowing a count that is duplicitous under New York state law,[129] this Court lacks the power to review the application of state law by state courts on a petition for a writ of habeas corpus.[130]  Because the count contained in the jury charge was constitutionally permissible, Jones has failed to demonstrate that the Appellate Division's alternative holding on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[131]  As such, federal habeas relief is unavailable on Jones's duplicity claim.

---

[128]    *Jones IV*, 881 N.Y.S.2d at 294-95.

[129]    *See* Pet. Mem. at 20-26.

[130]    *See* 28 U.S.C. § 2254(a), (d).

[131]    *Id.* § 2254(d)(1).

C.   **The Trial Court's Decision on Jones's *Strickland* Claim Was in Accordance with Clearly Established Federal Law**

In addition to his duplicity claim, Jones also asserts that trial counsel's failure to raise that issue amounts to ineffective assistance of counsel, violating Jones's constitutional rights under the Sixth Amendment.[132]  This claim was already addressed on the merits by the trial court, which denied Jones's motion to vacate the judgment on ineffective assistance grounds.[133]  As such, that court's decision is entitled to deference under AEDPA, meaning Jones must show that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law."[134]

As a preliminary matter, the trial court, in denying Jones's second Section 440.10 motion, did not "arrive[] at a conclusion opposite to that reached by [the Supreme] Court on a question of law."[135]  Nor did it "confront[] facts that [were] materially indistinguishable from a relevant Supreme Court precedent and

---

[132]   *See* Pet. Mem. at 27-28.

[133]   *See Jones II*, slip op. at 5-15.

[134]   28 U.S.C. § 2254(d).

[135]   *Taylor*, 529 U.S. at 405.

37

arrive[] at a result opposite to [the Supreme Court's]."[136]  Jones has cited no

Supreme Court decision that was factually indistinguishable from this case and

resulted in a finding that trial counsel was ineffective.  Jones has therefore failed to

show that the trial court's decision was contrary to clearly established federal law.

 Like the "contrary to" prong of Section 2254(d), the "unreasonable

application" prong can also be triggered in two ways,[137] neither of which applies to

Jones's case.  The trial court correctly identified the "correct governing legal rule"

(here, *Strickland*)[138] and did not unreasonably apply it to the facts of the case.  The

court ruled against Jones's ineffective assistance claim on two grounds, finding

that (1) trial counsel's decision to not raise a duplicity claim was strategic, and (2)

there was no prejudice caused by not raising that claim.[139]

 In support of the first ground, the trial court cited evidence that

counsel sought to minimize the number of counts presented to the jury, a decision

---

[136] *Id.*

[137] *See id.* at 407.

[138] *See Jones II*, slip op. at 5 (citing *Strickland*, 466 U.S. 668).

[139] *See id.* at 6, 8-12.  The trial court also noted that "viewing the evidence and circumstances of this case in totality, counsel provided defendant with effective assistance" and "in fact . . . was stellar" in his performance.  *Id.* at 6 & n.1.

stemming from his desire to avoid possible consecutive sentences and from his knowledge of the trial court's sentencing practices.[140]   Under *Strickland*, if "[c]ounsel's strategy choice was . . . within the range of professionally reasonable judgments,"[141] there can be no claim of ineffective assistance.  Attempting to avoid possible consecutive sentences is a "professionally reasonable" strategy choice, making it clear that the trial court correctly applied *Strickland* to its findings of fact.

As to the second ground, *Strickland* requires the defendant to demonstrate prejudice stemming from counsel's alleged error, "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[142]   The trial court's finding that "'there is no reasonable possibility that the outcome of the trial would have changed as a result of curative action by the court'"[143] correctly precluded relief under *Strickland* and its progeny. The only United States Supreme Court decision cited by the trial court in *Jones II*

---

[140]   *See id.* at 11 (citing 12/24/07 Jean Soo Park's Affirmation in Opposition ("Park Aff."), Ex. 6 to Whetstone Decl., ¶¶ 19-20).

[141]   466 U.S. at 699.

[142]   *Id.* at 687.

[143]   *Jones II*, slip op. at 9 (quoting *People v. Wood*, 831 N.Y.S.2d at 40).

was *Strickland*, and thus there was no "unreasonable extension" of existing

Supreme Court precedent.  Likewise, Jones has cited no Supreme Court decision

that should have been extended to apply to the facts of his case.  For all of these

reasons, the trial court's decision on Jones's *Strickland* claim was in accordance

with clearly established federal law.

### D.    Denial of Certificate of Appealability

The final issue is whether to grant Jones a Certificate of Appealability

("COA").  For a COA to issue, a petitioner must make a "substantial showing of

the denial of a constitutional right."[144]  A "substantial showing" does not require a

petitioner to demonstrate that she would prevail on the merits, but merely that

"reasonable jurists could debate whether . . . the petition should have been resolved

in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'"[145]  Petitioner has made no such showing.

While his claim was well-argued, reasonable jurists could not debate the fact that it

---

[144]    28 U.S.C. § 2253(c)(2).

[145]    *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983) (internal quotation marks omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

fails on the merits — in some cases on multiple independent grounds. As such, this Court will not issue a COA.

## VI.    CONCLUSION

For the reasons set forth above, Jones's petition for a writ of habeas corpus is denied. This Court declines to issue a Certificate of Appealability. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 12, 2013

41

## - Appearances -

**Petitioner (Pro Se):**

Larry Jones
# 05-A-2870
Wallkill Correctional Facility
Route 208, Box G
Wallkill, NY 12589-0286


**For Respondent:**

Mary Jo L. Banchard
Kayonia L. Whetstone
Assistant District Attorneys
Bronx County District Attorney's Office
198 East 161st Street
Bronx, NY 10451
(718) 838-7143